## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| Jane Doe 1, Jane Doe 2, and John Doe, individually and on behalf of all others similarly situated,<br><br>     Plaintiffs,<br><br> v.<br><br>Aetna, Inc.,<br><br>     Defendant. | Case No. |

## CLASS ACTION COMPLAINT

Plaintiffs, individually and on behalf of the Class and the Sub-Classes set forth below, through their undersigned counsel, bring the following Class Action Complaint against Defendant Aetna, Inc., ("Aetna" or the "Defendant").

### SUMMARY OF THE ACTION

1.  Plaintiffs seek relief for Aetna's unauthorized disclosure of their highly confidential personal medical information.

2.  Aetna, together with its subsidiaries and affiliates, is one of the nation's largest health care benefits companies, providing insurance and related services to over 46 million people.  Aetna, or its subsidiaries or affiliates, provided insurance or related services to Plaintiffs and the Class members.

3.  On or about July 28, 2017 Aetna recklessly and unlawfully revealed confidential HIV-related information of Plaintiffs and approximately 12,000 Class members throughout the country by mailing them letters in envelopes with large, transparent windows. Through these envelope windows anyone coming into contact with the envelope (including mail carriers,

1

roommates, friends, family members, etc.) could clearly see (i) the recipient's name and address, and (ii) a discussion of how to obtain prescription medications for HIV.

4.      This illegal disclosure of confidential information caused significant harm to Plaintiffs and the Class members. Among other harms, Class members have suffered stress and anxiety from the involuntary disclosure of their HIV status are at increased risk of stigma and ostracism in their personal and professional lives, and have suffered direct and indirect financial harm.

5.      This action seeks to prevent similar future unlawful conduct by Aetna and to repair, to the extent possible, the serious harm caused to Plaintiffs and the Class members.

## PARTIES

6.      To protect their privacy and prevent further disclosure of their personal medical information, all Plaintiffs are proceeding using a pseudonym.[1]

7.      Plaintiff Jane Doe 1 is a resident of Hillsborough County, Florida. In late July or early August of 2017, she received a letter from Aetna that revealed her confidential HIV-related information in the manner described in Paragraph 3. She did not authorize this disclosure.

8.      Plaintiff Jane Doe 2 is a resident of Cook County, Illinois. In late July or early August of 2017 she received a letter from Aetna that revealed her confidential HIV-related information in the manner described in Paragraph 3. She did not authorize this disclosure.

---

[1] All named Plaintiffs herein are proceeding using pseudonyms to protect their privacy, as has been permitted by other courts within the Second Circuit in cases where similar sensitive personal information is involved. *See Doe v. Deer Mountain Day Camp, Inc.*, No. 07-cv-5495 (S.D.N.Y. Jun. 22, 2007) (permitting minor and his parent alleging HIV discrimination against camp to proceed under pseudonym); *EW v. New York Blood Center*, 213 F.R.D. 108, 110 (E.D.N.Y. 2003) (holding that the prejudice of embarrassment and fear of stigmatization because plaintiff had a "sexually and blood-transmitted disease" like AIDS "is real.").

9.     Plaintiff John Doe is a resident of Broward County, Florida. In late July or early August of 2017 he received a letter from Aetna that revealed his confidential HIV-related information in the manner described in Paragraph 3. He did not authorize this disclosure.

10.     Jane Doe 1, Jane Doe 2, and John Doe are collectively referred to herein as "Plaintiffs."

11.     Defendant Aetna, Inc. is a Pennsylvania corporation. Aetna is registered to do business in Connecticut and maintains its principal offices at 151 Farmington Avenue, Hartford, CT 06156. Aetna's registered agent in Connecticut is C T Corporation System, 67 Burnside Ave, East Hartford, CT, 06108-3408.

12.     Aetna, together with its subsidiaries and affiliates, is one of the nation's largest health care benefits companies, providing insurance and related services to over 46 million people. Aetna, together with its subsidiaries and affiliates, has approximately 49,500 employees, and had $63.2 billion in revenue in 2016. Aetna's operations are carried out by its employees, numerous subsidiaries, affiliates, contractors, and other agents.

## JURISDICTION AND VENUE

13.     This Court has jurisdiction over this action under 28 U.S.C. § 1332(d) because the amount in controversy exceeds $5,000,000, exclusive of interest and costs; there are at least 100 members of the proposed Class; and at least one member of the proposed Class is a citizen of a different state from the Defendant.

14.     Venue is appropriate in this district under 28 U.S.C. § 1391 because Aetna resides in this District and because a substantial part of the events giving rise to the claims occurred in this District.

## FACTUAL ALLEGATIONS

15.      In 2014 and 2015 Aetna was named as a defendant in two lawsuits brought by its customers alleging, *inter alia*, that Aetna's practice of requiring customers to receive HIV medications through the mail risked violating their privacy by disclosing their use of HIV medications to third parties.

16.      In early 2017 Aetna settled those lawsuits, and as part of the settlement committed to notify customers who had submitted claims for HIV medications of their various options for obtaining these medications.

17.      On or about July 28, 2017, pursuant to those settlements, Aetna (acting through a mailing vendor it hired for this purpose) sent to certain of its customers who had previously ordered HIV medicines a letter regarding procedures for obtaining HIV medicines.

18.      These letters were sent to each of the Plaintiffs and the members of the proposed Class. A redacted copy of the letter received by John Doe is filed herewith as Exhibit 1. Approximately 12,000 such letters were sent throughout the United States.

19.      Rather than sending these letters in secure envelopes, Aetna and its mailing vendor instead sent this highly sensitive personal information in envelopes with a large transparent window.

20.      The letter's reference to HIV medications was clearly visible through the envelope's transparent window, along with each recipient's name and mailing address. As such, anyone coming into contact with the envelope (including mail carriers, roommates, friends, family members, etc.) would learn confidential medical information of the intended recipient— namely their use of HIV medications, which the original lawsuits were seeking to protect.

21.      For example, in one such letter received by a Class member and reproduced below, the visible portion of the letter clearly indicated that it was from Aetna, included the

4

recipient's name and address, and discussed options for filling prescriptions for HIV

medications:



22.     A second example of a letter sent from Aetna to a Class member similarly

displays through the clear window the recipient's name and address, and also visibly discusses

HIV medications:



23.    A third example of a letter sent from Aetna to a Class member likewise displays through the clear window the recipient's name and address, and also visibly discusses HIV medications:



24.    A fourth example of a letter sent from Aetna to a Class member also displays through the clear window the recipient's name and address, and visibly discusses HIV medications:



25.     Aetna never sought or received Plaintiffs' or Class members' permission to disclose this personal and confidential information in this manner.

26.     Aetna and its mailing vendor easily could have avoided disclosing this information by taking minimal precautions, for example, by sending these notices in secure envelopes without transparent windows.

27.     According to Ronda B. Goldfein, Executive Director of the AIDS Law Project of Pennsylvania, Aetna's disclosure of this confidential information, "creates a tangible risk of violence, discrimination and other trauma."

28.     According to Sally Friedman, the Legal Director of another non-profit organization that promotes HIV testing and combats HIV-related discrimination, "Aetna's privacy violation devastated people whose neighbors and family learned their intimate health information.  They also were shocked that their health insurer would utterly disregard their privacy rights." Friedman also reported, "I know of someone who has been kicked out of his home because somebody who saw his envelope learned his HIV status."

29.     New York's Attorney General, Eric Schneiderman, wrote to Aetna calling the disclosure "unacceptable," and an apparent violation of the federal Health Insurance Portability and Accountability Act ("HIPAA").

30.     Aetna's response to these developments and the numerous inquiries it received from worried customers was an equivocal letter of apology from Aetna's Chief Privacy Officer, in which Aetna sought to deflect blame for its reckless and harmful conduct. Aetna's apology letter stated:

> a.     "We are writing to notify you of a privacy breach that *may have* involved some of your health information."

      b.        "*In some cases*, personal health information was visible through the window of the envelope."

      c.        "We then confirmed that *the vendor handling the mailing* had used a window envelope, and, *in some cases*, the letter *could have shifted* within the envelope in a way that allowed personal health information to be viewable."

      d.        "The information displayed in the envelope's window was your first name, last name, address, and *in some cases*, a reference to filling prescriptions for HIV medications. The viewable information did not include the name of any particular medication or any statement that you have been diagnosed with a specific condition."

(all emphasis added).

31.     A redacted copy of the apology letter received by John Doe, dated August 24, 2017, is filed herewith as Exhibit 2.

32.     The apology letter is disingenuous, at least insofar as it blames the disclosure on shifting of the original letters within their envelopes. As is clearly seen from the four example photographs above, the envelope window was so large, and the letters were formatted in such a way, that every such envelope almost certainly revealed both (i) the recipient's name and address, and (ii) discussion of how to obtain HIV related medication.

33.     The apology letter made no offer to attempt to repair the harm suffered by customers whose personal medical information Aetna had unlawfully disclosed.

34.     A month later on September 28, 2017, after continued public scrutiny of Aetna's conduct, Aetna belatedly announced in a press release an insufficient effort to be seen as providing relief to those affected.

35.     The press release states that Aetna "is not admitting any wrongdoing," and is merely offering assistance to individuals and families "who *claim* they were affected," by the "*potential inadvertent* disclosure of their personal health information." (Emphasis added). The press release expressly reserves all of Aetna's rights and defenses, and states that

"[d]eterminations of requests for financial reimbursement, payments or counseling services will be made *at Aetna's sole and complete discretion*." (Emphasis added).

## LAWS PROTECTING CONFIDENTIAL MEDICAL INFORMATION

36.    Numerous state and federal laws exist to protect individuals' privacy rights in their confidential medical information.

37.    Federal laws, such as HIPAA, were enacted in recognition of the important privacy rights that individuals should expect to have over their sensitive medical information.

38.    The HIPAA Privacy Rule, codified in 45 C.F.R. 160 and 164, establishes national standards to protect individuals' medical records and other personal health information. This rule requires appropriate safeguards to protect the privacy of personal health information, and sets limits and conditions on the uses and disclosures that may be made of such information without patient authorization.

39.    State laws motivated by similar concerns also recognize individuals' rights protecting their personal medical information. For example, the Illinois Medical Patient Rights Act, 410 Ill. Comp. Stat. 50, provides for "The right of each patient to privacy and confidentiality in health care." Likewise, Florida Statutes § 395.3025(4) provides, "Patient records are confidential and must not be disclosed without the consent of the patient."

40.    Many laws also specifically protect individuals' HIV-related medical information. HIV is the virus that causes AIDS. Despite the fact that the first AIDS case was identified more than 40 years ago, people living with HIV and AIDS still face extreme stigma. In fact, stigma is widely recognized as a driver of the AIDS epidemic.

41.    For example, preliminary results from one ongoing study indicate that nearly 73% of participants experienced at least 1 of 11 forms of exclusion, stigma or discrimination, including gossip, rejection by family or friends, exclusion from religious organizations, or verbal

and/or physical harassment. Another survey found that as recently as 2012, more than half of Americans still said they felt some discomfort with people with HIV/AIDS, and that many Americans have misconceptions about how HIV is transmitted.

42.     To ensure that people feel safe to come forward to be tested and treated for HIV, most states have enacted laws that protect the confidentiality of a person's HIV-related information. Thirty-nine states have either HIV-specific privacy statutes or general privacy provisions that expressly mentioned HIV. The remaining states may protect its confidentiality under other statutes or provisions.

43.     For example, The Illinois legislature enacted the AIDS Confidentiality Act, 410 Ill. Comp. Stat. 305, in part because:

   a.     "Despite existing laws, regulations and professional standards which require or promote the . . . confidential use of tests designed to reveal HIV infection, many members of the public are deterred from seeking such testing because they . . . fear that test results or other health information that reveals their HIV status will be disclosed without their consent."

   b.     "The public health will be served by . . . appropriately protecting the health information privacy of patients who are HIV-positive."

   c.     "Limiting the use or disclosure of, and requests for, protected health information . . . is a key component of health information privacy."

44.     Under Section 9 of the Illinois AIDS Confidentiality Act, "No person may disclose . . . HIV-related information," unless a specific exception is met.

45.     Similarly, Florida's Omnibus AIDS Act, principally codified at Florida Statutes §381.004, protects from disclosure the identity and test results of persons being tested for HIV.

## HARM TO PLAINTIFFS AND THE CLASS MEMBERS

46.     Plaintiffs have suffered from increased stress and anxiety as a result of Aetna's reckless conduct. The increased stress and anxiety has harmed Plaintiffs' health and their personal lives.

47.     Plaintiffs and Class members have suffered and are entitled to damages for the lost benefit of their bargain with Aetna. Aetna received payment in the form of premiums and fees for health insurance or related services for Plaintiffs and Class members. Aetna's customers were entitled to reasonably expect part of the price for Aetna's products to fund privacy practices sufficient to comply with Aetna's obligations under state and federal law. The lost benefit of the bargain is measured by the difference between the value of what Plaintiffs and Class members should have received (services with adequate privacy protections), and the value of what they actually did receive (services without adequate privacy protections).

48.     Plaintiffs and Class members also suffered a loss of value of their confidential medical information when it was disclosed through the envelope window.

49.     Plaintiffs and Class members have suffered and will continue to suffer embarrassment, anxiety, emotional distress, and fear, and are at increased risk for losing employment, housing, access to health care, and even violence or other trauma as a result of the disclosure of their use of HIV medications.

## CLASS ACTION ALLEGATIONS

50.     Plaintiffs bring this action individually and on behalf of the following Class:

All individuals to whom Aetna mailed a letter discussing HIV medication, in an envelope with a transparent window through which such individuals' confidential medical information was potentially visible, to an address in the United States, in July or August of 2017.

51.     Plaintiffs bring certain claims in this action on behalf of the Illinois Sub-Class:

All individuals to whom Aetna mailed a letter discussing HIV medication, in an envelope with a transparent window through which such individuals' confidential medical information was potentially visible, to an address in Illinois, in July or August of 2017.

52.     Plaintiffs bring certain claims in this action on behalf of the Florida Sub-Class:

All individuals to whom Aetna mailed a letter discussing HIV medication, in an envelope with a transparent window through which such individuals' confidential medical information was potentially visible, to an address in Florida, in July or August of 2017.

53.     The members of the Class and the Sub-Classes are so numerous that the joinder of all members is impractical. Plaintiffs estimate that the Class consists of approximately 12,000 people. Plaintiffs believe that each of the Illinois Sub-Class and the Florida Sub-Class has more than 100 members.

54.     The proposed Class and the Sub-Classes are ascertainable because Aetna's records will quickly and easily reveal the recipients of the letters in question and their mailing addresses.

55.     There are questions of fact and law common to the Class and the Sub-Classes as all Class members were subject to the same conduct under the same factual circumstances. Common questions of law and fact include:

a.     whether Aetna had a duty to use reasonable care to safeguard Class members' private information;

b.     whether Aetna breached the duty to use reasonable care to safeguard Class members' medical information;

c.     whether Aetna breached its contractual promises to safeguard Class members' medical information;

d.     whether Aetna was negligent *per se* in not complying with federal and state privacy laws; and

e.     the proper measure of damages.

56.     Plaintiffs' claims are typical of those of the members of the Class and the Sub-Classes because Plaintiffs suffered the same breach of privacy as other Class members.

12

57.     Plaintiffs will fairly and adequately protect the interests of the Class and the Sub-Classes because they and their counsel are free of conflicts of interest and are prepared to vigorously litigate this action on behalf of the Class. Plaintiffs' counsel have substantial experience representing plaintiffs in class action lawsuits, including in cases based on unlawful disclosure of individuals' confidential information.

58.     Class certification is appropriate under Fed. R. Civ. P. 23(b)(2) because Aetna has acted or refused to act on grounds that apply generally to the Class and the Sub-Classes, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

59.     Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Class and the Sub-Classes predominate over any questions affecting only individual members of the Class or the Sub-Classes, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Aetna engaged in a common course of conduct. Members of the Class do not have an interest in pursuing separate actions against Aetna, as the amount of each Class member's individual claim is small compared to the expense and burden of individual prosecution. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Aetna's practices. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Class members' claims in a single forum.

60.     Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would

advance the disposition of this matter and the parties' interests therein.  Such particular issues include, but are not limited to:

    a.   whether Aetna had a legal duty to safeguard Class members' private information;

    b.   whether Aetna's conduct as complained of herein was unlawful;

    c.   whether Aetna violated the Illinois AIDS Confidentiality Act;

    d.   whether Aetna violated the Illinois Consumer Fraud and Deceptive Business Practices Act; and

    e.   whether Aetna's conduct was an unlawful, unfair or unconscionable business practice under the Florida Deceptive and Unfair Trade Practices Act.

### CLAIMS FOR RELIEF

### COUNT I
### Negligence and Negligence *Per Se*
### On Behalf of Plaintiffs and the Class

61.    Plaintiffs re-allege and incorporate by reference the allegations in the preceding paragraphs.

62.    Aetna owed duties of care to protect Plaintiffs' and Class Members' confidential medical information. Plaintiffs and Class Members entrusted their private medical information to Aetna.

63.    Aetna knew or should have known of the risks inherent in disseminating highly personal and confidential, HIV-related medical information of Plaintiffs and Class Members in a large-window envelope.

64.    Aetna owed duties of care to Plaintiffs and Class Members because Plaintiffs and Class Members were foreseeable and probable victims of using a large-window envelope and negligent mailing practices to send confidential medical information.

65.     Aetna acted with reckless disregard for the security and confidentiality of Plaintiffs' and Class Members' private medical information by using a large-window envelope to send confidential HIV-related medical information.

66.     Aetna breached its duties to Plaintiffs and Class members by failing to exercise reasonable care in protecting Plaintiffs' and the Class Members' HIV-related medical information.

67.     Pursuant to HIPAA and the laws of numerous states, Aetna had a duty to implement reasonable safeguards to protect Plaintiffs' and Class Members' HIV-related medical information.

68.     Pursuant to state laws in many states, Aetna had a duty to Plaintiffs and Class Members residing in those states to not disclose and to safeguard Plaintiffs' and Class Members' confidential HIV-related medical information.

69.     Aetna breached its duties to Plaintiffs and Class Members under the aforementioned laws by allowing confidential medical information, particularly HIV-related information, to be sent in an unreasonable manner.

70.     Aetna's failure to comply with applicable laws and regulations constitutes negligence *per se*.

71.     As a direct result of Aetna's negligence, Plaintiffs and Class Members have suffered or will suffer damages, including embarrassment, anxiety, emotional distress, and fear, and are at increased risk for losing employment, housing, access to health care, and even violence or other trauma.

15

## COUNT II
### Breach of Contract
### On Behalf of Plaintiffs and the Class

72.     Plaintiffs re-allege and incorporate by reference the allegations in the preceding paragraphs.

73.     Plaintiffs and Class Members who purchased individual insurance policies or who enrolled pursuant to the terms of a group contract with Aetna entered into binding and enforceable contracts with Aetna, supported by consideration including the payment of premiums, contributions and/or fees by or on behalf of Plaintiffs and the Class Members.

74.     These contracts incorporated Aetna's privacy polices wherein Aetna promised to protect the privacy of Plaintiffs' and Class Members' personal information in accordance with federal and state privacy laws, as well as Aetna's own privacy policies.

75.     The Aetna policies and procedures referenced in Aetna's plan documents state that Aetna complies "with all applicable state and federal law pertaining to the security and confidentiality of personal information."

76.     It was a violation of federal and state law, and Aetna's own privacy policies, to disclose Plaintiffs' and Class Members' highly confidential HIV medication information in the manner described above.

77.     As a result of Aetna's breach of contract, Plaintiffs and Class Members did not receive the full benefit of the bargain and instead received health insurance and/or health care services that were less valuable than described in their contracts.

78.     Plaintiffs and Class Members have been injured as a result of Aetna's breach of contract and are entitled to damages.

## COUNT III
### Unjust Enrichment
### On Behalf of Plaintiffs and the Class

79.     Plaintiffs re-allege and incorporate by reference the allegations in the preceding paragraphs.

80.     Plaintiffs and Class Members conferred a monetary benefit on Aetna in the form of premiums and fees paid, either directly or on their behalf, for the purchase of health insurance and/or related services.

81.     Aetna appreciated or had knowledge of the benefits it received from or on behalf of Plaintiffs and the Class Members.

82.     The fees and premiums that Plaintiffs and Class Members caused to be paid to Aetna should have been used, in part, to pay for the administrative costs of reasonable privacy safeguards.

83.     As a result of Aetna's conduct, Plaintiffs and Class Members suffered actual damages in an amount equal to the difference in value between health insurance with the reasonable privacy safeguards that Plaintiffs and Class Members were entitled to, and health insurance without reasonable privacy safeguards.

84.     Under principles of equity and good conscience, Aetna should not be permitted to retain the excess funds paid by or on behalf of Plaintiffs and Class Members.

85.     Aetna should be compelled to disgorge into a common fund for the benefit of Plaintiffs and Class Members all inequitable proceeds received by Aetna.

## COUNT IV
### Invasion of Privacy
### On Behalf of Plaintiffs and the Class

86.     Plaintiffs re-allege and incorporate by reference the allegations in the preceding paragraphs.

87.     Aetna published private facts about Plaintiffs and Class Members by disclosing and exposing to unauthorized individuals that Plaintiffs and Class Members were prescribed HIV medication through the use of the large-window envelope and other negligent or reckless mailing practices.

88.     The disclosure of the kinds of medications a person is taking, especially HIV medications, would be offensive to a reasonable person of ordinary sensibilities.

89.     The fact that Class Members are taking HIV medications is not a matter of legitimate public concern.

90.     As a direct and proximate result of Aetna's conduct, Plaintiffs and Class Members have been injured and are entitled to damages.

91.     Plaintiffs and the Class are also entitled to injunctive relief enjoining Aetna from further such wrongful conduct.

## COUNT V
### Violation of Illinois AIDS Confidentiality Act
### On Behalf of Jane Doe 2 and the Illinois Sub-Class

92.     Plaintiffs re-allege and incorporate by reference the allegations in the preceding paragraphs.

93.     The Illinois legislature enacted the AIDS Confidentiality Act, 410 Ill. Comp. Stat. 305, in part because:

      a.     "Despite existing laws, regulations and professional standards which require or promote the . . . confidential use of tests designed to reveal HIV

infection, many members of the public are deterred from seeking such testing because they . . . fear that test results or other health information that reveals their HIV status will be disclosed without their consent."

b.   "The public health will be served by . . . appropriately protecting the health information privacy of patients who are HIV-positive."

c.   "Limiting the use or disclosure of, and requests for, protected health information . . . is a key component of health information privacy."

94.   Under Section 9 of the Illinois AIDS Confidentiality Act, "No person may disclose . . . HIV-related information," unless a specific exception is met.

95.   Under Section 3(p) of the Illinois AIDS Confidentiality Act, "HIV-related information" is defined to include, "the identity of an individual upon whom an HIV test is performed," as well as "prescription information that reveals a patient is HIV-positive."

96.   Under Section 13 of the Illinois AIDS Confidentiality Act, any person aggrieved by a violation of the Act may recover in a civil action:

a.   for each negligent violation, liquidated damages of $2,000 or actual damages, whichever is greater

b.   for each intentional or reckless violation, liquidated damages of $10,000 or actual damages, whichever is greater;

c.   reasonable attorney fees; and

d.   such other relief, including an injunction, as the court may deem appropriate.

97.   Although insurers regulated under the Illinois Insurance Code are not subject to the Illinois AIDS Confidentiality Act, on information and belief Aetna, Inc. is not an insurer regulated under the Illinois Insurance Code within the meaning of the Illinois AIDS Confidentiality Act, and Aetna's conduct at issue here is beyond the scope of any exemption for such companies provided under the Illinois AIDS Confidentiality Act.

98.     As described above, Aetna has violated the Illinois AIDS Confidentiality Act by disclosing the HIV-related information of Jane Doe 2 and the Illinois Sub-Class.

**COUNT VI**
**Violation of Illinois Consumer Fraud and Deceptive Business Practices Act**
**On Behalf of Jane Doe 2 and the Illinois Sub-Class**

99.     Plaintiffs re-allege and incorporate by reference the allegations in the preceding paragraphs.

100.    The Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505, prohibits unfair or deceptive acts or practices in the conduct of any trade or commerce.

101.    The Illinois Consumer Fraud and Deceptive Business Practices Act provides a private right of action for harmed consumers, under which they may recover actual damages, and injunctive relief, and reasonable attorney's fees and costs.

102.    Although the Illinois Consumer Fraud and Deceptive Business Practices Act does not apply to certain false information in connection with insurance sales, on information and belief Aetna, Inc. and  its conduct at issue here do not qualify for this exception.

103.    Aetna violated the Illinois Consumer Fraud and Deceptive Business Practices Act through the conduct discussed herein, including by failing to disclose that it provided inadequate privacy protections for its customers' sensitive medical information.

## COUNT VII
### Violation of Florida Deceptive and Unfair Trade Practices Act
### On Behalf of Jane Doe 1 and the Florida Sub-Class

104.    Plaintiffs re-allege and incorporate by reference the allegations in the preceding paragraphs.

105.    The Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq.*, prohibits unfair or deceptive acts or practices in the conduct of any trade or commerce.

106.    The Florida Deceptive and Unfair Trade Practices Act provides a private right of action for harmed consumers, under which they may recover actual damages, attorney's fees and costs.

107.    Although the Florida Deceptive and Unfair Trade Practices Act does not apply to persons or activity regulated by the Florida Office of Insurance Regulation, on information and belief Aetna, Inc. and its activity at issue here do not qualify for this exception.

108.    Aetna violated the Florida Deceptive and Unfair Trade Practices Act through the conduct discussed herein, including by failing to disclose that it provided inadequate privacy protections for its customers' sensitive medical information.

### JURY DEMAND

109.    Plaintiffs, individually and on behalf of the Class, demand a jury trial as to all claims so triable.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the Class, seek the following relief:

      a.    Determining that this action may proceed as a class action under Fed. R. Civ. P. 23;

      b.    Designating Plaintiffs as the class representatives for the Class, designating Jane Doe 1 as the class representative for the Florida Sub-

Class, and designating Jane Doe 2 as the class representative for the
Illinois Sub-Class;

c.    Designating Plaintiffs' undersigned counsel as counsel for the Class and
the Sub-Classes;

d.    Issuing proper notice to the Class and the Sub-Classes at Aetna's expense;

e.    Declaring that Aetna committed the violations of law set forth above;

f.    Ordering appropriate injunctive relief, including the implementation of
appropriate policies and procedures to protect HIV-related information;

g.    Awarding damages, including statutory and/or punitive damages;

h.    Awarding reasonable attorneys' fees and costs and expenses; and

i.    Granting other and further relief, in law or equity, as this Court may deem
appropriate and just.

Dated: October 18, 2017

GLANCY PRONGAY & MURRAY LLP

By: Brian P. Murray
Brian P. Murray (CT 25372)
230 Park Avenue, Suite 530
New York, NY 10169
Telephone: (212) 682-5340
bmurray@glancylaw.com

Paul C. Whalen
LAW OFFICE OF PAUL C. WHALEN, P.C.
768 Plandome Road
Manhasset, NY  11030
Telephone: (516) 426-6870
paul@paulwhalen.com

Jasper D. Ward IV
JONES WARD PLC
312 S. Fourth Street
Louisville, KY 40202
Telephone: (502) 882-6000
jasper@jonesward.com

John Yanchunis
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
201 North Franklin Street, 7th Floor
Tampa , Florida 33602
Telephone: (813) 275-5272
jyanchunis@forthepeople.com

Jean S. Martin
**LAW OFFICE OF**
**JEAN SUTTON MARTIN, PLLC**
2018 Eastwood Road Suite 225
Wilmington, NC 28403
Telephone: (800) 678-6612
jean@jsmlawoffice.com

*Attorneys for Plaintiffs and the Class*